NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
WIENTEX INTERNATIONAL GROUP,        :
INC.,                               :
                                    :
            Plaintiff,              :
                                    :   Civil Action No. 04-3668 (JAP)
        v.                          :
                                    :
LIZ CLAIBORNE, INC., SEARDEL        :
GROUP TRADING (PTY) LTD., AND       :   **OPINION**
GARY ROSS, Individually,            :
                                    :
            Defendants.             :
_____ :

APPEARANCES:

Steven Siegler, Esq.
Deutsch Resnick, PA
One University Plaza – Suite 305
Hackensack, New Jersey 07601
   Attorney for Plaintiff

Christina M. Rackett-Solis, Esq.
Cathi A. Hession, Esq.
Fleming, Zulack & Williamson, LLP
One Liberty Plaza – 35th Floor
New York, New York 10006
   Attorneys for Defendant
   Seardel Group Trading (PTY) Ltd.

PISANO, District Judge.

Before the Court is Defendant, Seardel Group Trading Limited's ("Seardel") motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendant seeks dismissal of count one of Plaintiff Wientex International Group, Inc.'s ("Wientex") complaint.  Count one is a breach of contract claim for commissions Plaintiff claims it was entitled to receive under an agreement with Seardel's Ladieswear Division ("Ladieswear").  For the reasons set forth below, the Court grants Defendant's motion for partial summary judgment and thus dismisses the breach of contract claim in count one of Plaintiff's complaint.[1]

## I.     Background

Plaintiff, Wientex, is a New Jersey corporation that represents South African apparel manufacturers in sales of clothing to customers in the United States. Defendant Seardel is a clothing and textile manufacturer registered in accordance with the laws of the Republic of South Africa.  On March 7, 2001, Wientex entered into a one-page written Memorandum of Agreement with Ladieswear, a division of Seardel.  The agreement provides that Wientex will be the sole representative of Ladieswear with respect to sales of apparel to customers based in the United States and sets forth the circumstances in which Wientex would receive commissions.

From the time this agreement was executed on March 7, 2001 until approximately June, 2002, Liz Claiborne, Inc. ("Liz Claiborne"), a clothing retailer incorporated in Delaware and

---

[1] The Court has jurisdiction to hear this case under 28 U.S.C. § 1332 (2005) based on diversity of citizenship.  Defendant Seardel is a citizen of the Republic of South Africa. Defendants Liz Claiborne, Inc. and Gary Ross, who are not parties to this motion for partial summary judgment, are citizens of Delaware and Pennsylvania, respectively.  Plaintiff Wientex is a New Jersey corporation.

based in the United States, began purchasing goods from Ladieswear through Wientex.  During this time, Wientex received a 6% commission under the parties' agreement with respect to orders placed by Liz Claiborne through Wientex for Ladieswear products.

In approximately June, 2002, Gary Ross, Vice President of Worldwide Operations for Liz Claiborne, advised Lance Wiener, owner of Wientex, that Liz Claiborne would be conducting all future business directly with Ladieswear.[2]  Ladieswear and Liz Claiborne began dealing directly with each other, without using Wientex as a middle-man.  Ladieswear refused to pay Wientex any commissions for these direct sales to Liz Claiborne.

Wientex sued Seardel, Liz Claiborne, and Gary Ross setting forth various causes of action, including a claim that Ladieswear breached its agreement with Wientex by selling apparel directly to Liz Claiborne and not paying Wientex a 6% commission on such sales.[3]  In support of its claim, Plaintiff sets forth the following theories of recovery:  (1) the agreement grants Wientex an exclusive right to sell Ladieswear products to United States customers and Ladieswear breached this agreement by selling directly to Liz Claiborne, thus entitling Wientex to a 6% commission on those sales; (2) the agreement provides that Wientex should receive a 6% commission on sales made by Ladieswear directly to Liz Claiborne because these sales emanated

---

[2] The parties' respective Rule 56.1 Statements give a differing account of the manner in which Gary Ross advised Lance Wiener that Liz Claiborne would be dealing solely with Ladieswear.  However, it is undisputed that in approximately June, 2002, Ross informed Wiener that from that point forward, Liz Claiborne would be dealing directly with Ladieswear.

[3] Defendants Liz Claiborne and Gary Ross were not parties to the March 7, 2001 agreement between Wientex and Ladieswear and thus, do not join in this motion for partial summary judgment on Plaintiff's breach of contract claim.

from Wientex's introduction of Liz Claiborne to Ladieswear[4] and the orders that Wientex previously obtained from Liz Claiborne before it was eliminated as the middle-man; and (3) if the agreement is silent on whether Wientex is entitled to receive a 6% commission on Ladieswear's direct sales to Liz Claiborne, Wientex is entitled to such commission because it was the "efficient procuring cause" of the sales to Liz Claiborne.[5]

The Court finds that (1) under the agreement, Wientex did not have an exclusive right to sell Ladieswear products to United States customers to the exclusion of Ladieswear itself and thus, Ladieswear was not prohibited from dealing directly with Liz Claiborne; (2) the agreement provides that Wientex is entitled to a 6% commission on orders it specifically procures and thus, it is not entitled to a commission on any orders that may emanate from Wientex's introduction of Liz Claiborne to Ladieswear or orders that Wientex originally procured; and (3) Wientex was not the "efficient procuring cause" of the Ladieswear's direct sales to Liz Claiborne.

## II.     Legal Discussion

### A.     Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[4] The parties disagree on whether Wientex first introduced Ladieswear to Liz Claiborne. For the purposes of this motion for partial summary judgment, the Court will view the facts in the light most favorable to Wientex, the non-moving party, see Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005), and thus, proceeds as if Wientex actually introduced Ladieswear to Liz Claiborne.

[5] The amount of commissions at issue here is approximately $420,000.00. This represents a 6% commission on the amount of direct sales from Ladieswear to Liz Claiborne, namely, approximately $7 million.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. Anderson, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. Big Apple BMW v. BMW of North America., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.     Contract Interpretation**

Under New Jersey law,[6] matters of contractual interpretation are generally a question of law. Dome Petroleum, Ltd. v. Employers Mut. Liab. Ins. Co., 767 F.2d 43, 47 (3d Cir. 1985). Plaintiff's breach of contract claim is based on the March 7, 2001 agreement between Wientex

---

[6] This is a diversity action brought pursuant to 28 U.S.C. § 1332. It is undisputed that New Jersey substantive law applies in this matter. Thus, this Court will analyze Defendant's motion for partial summary judgment under New Jersey law.

and Ladieswear.  There is no evidence to suggest that this agreement is invalid or that the parties did not intend to make the March 7, 2001 agreement between Wientex and Ladieswear the "exclusive memorial of the parties' contractual understanding."  See Vanguard, 900 F.2d at 650 (quoting Marcus & Co. V. K.L.G. Baking Co., 3 A.2d 627, 630 (N.J. 1939)).  Accordingly, the Court finds that the March 7, 2001 agreement between the parties is "indisputable as regards the terms" of the parties' agreement.  Id. (quoting Marcus & Co., 3 A.2d at 630).

When interpreting the terms of the parties' March 7, 2001 agreement, the Court must give the contract terms their "plain and ordinary meaning."  See Schor v. FMS Financial Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002) (citing Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992)).  If the terms of the agreement are clear, the Court must enforce the contract as written.[7]  See, e.g., Graziano v. Grant, 741 A.2d 156, 163 (N.J. Super. Ct. App. Div. 1999).  The Court may not supply a term which has not been agreed upon by the parties or make a better contract for the parties than the one entered into.  See Vanguard, 900 F.2d at 650-51; Graziano, 741 A.2d at 163.

Furthermore, extrinsic evidence is admissible "to understand the significance of the contract language, but not to give effect to an intent at variance with that language."  Dontzin v.

---

[7] Plaintiff states that if there is an ambiguity in the agreement, the writing is to be strictly construed against the draftsman.  See In re Miller's Estate, 447 A.2d 549, 555 (N.J. 1982).  However, if there is no ambiguity, this rule does not apply.  See, e.g., LoBianco v. Harleysville Ins. Co., 847 A.2d 584, 589 (N.J. Super. Law Div. 2003).  Furthermore, although the March 7, 2001 agreement was drafted by Peter Jacobson, Divisional Managing Director of Ladieswear, this was not a form contract or contract of adhesion.  The agreement was the product of significant negotiations between Lance Wiener, owner of Wientex, and Jacobson.  Accordingly, the March 7, 2001 agreement should not be construed against Ladieswear.  See Benjamin Moore & Co. V. Aetna Cas. & Sur. Co., 843 A.2d 1094, 1103-04 (N.J. 2004) (stating that principle that ambiguous contract language is to be construed against the drafter does not apply where agreement is product of negotiation between sophisticated commercial entities).

Myer, 694 A.2d 264, 267 (N.J. Super. Ct. App. Div. 1997). Therefore, to the extent that extrinsic evidence " 'tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant.' " Id. (quoting Casriel v. King, 65 A.2d 514, 514 (N.J. 1949)).

**C.    Exclusive Right to Sell**

The first issue presented in this case is whether the agreement between the parties grants Wientex an exclusive right to sell Ladieswear products to customers based in the United States. Wientex argues that it has such an exclusive right to sell, thus prohibiting Ladieswear from dealing directly with Liz Claiborne. Accordingly, Wientex argues, it is entitled to a 6% commission on the orders that Liz Claiborne placed directly with Ladieswear.

The Court finds that there is no genuine issue of material fact as to whether Ladieswear was permitted to deal directly with Liz Claiborne under the terms of its agreement with Wientex. A principal, such as Seardel, does not relinquish the right to sell unless there is "clear and unambiguous language within the four corners of the written . . . contract" establishing that the principal intended to relinquish that right. Lockhart v. Holiday Homes of St. Johns, Inc., 678 F.2d 1176, 1184 (3d Cir. 1982). In the absence of such language, the principal is permitted to compete with the agent. Restatement (First) of Agency § 449 (2004).[8]

---

[8] Plaintiff argues that the principles of Holiday Homes do not apply to this case because Holiday Homes dealt with a real estate transaction, not a sale of goods. As support for this contention, Plaintiff cites to footnote 3 in Vanguard Telecom, Inc. v. S. New England Telephone Co., 900 F.2d 645 (3d Cir. 1990) which states: "[w]e conclude that Holiday Homes is inapposite to a non-real estate context where the agreement is negotiated by sophisticated businessmen, as opposed to a form sales contract signed by the typical homeowner . . . ." However, the language in this footnote is specifically responsive to the court's analysis of the language necessary to overcome the common law presumption of "efficient procuring cause," see infra II.E. The footnote is not directed at the language required for a principal to relinquish the right to sell its own property.

In discussing the concept of exclusive right to sell, the Vanguard district court stated that

In this matter, the four corners of the agreement between Seardel and Wientex do not contain "clear and unambiguous language" granting Wientex the exclusive right to sell Ladieswear products to United States customers to the exclusion of the principal itself, Ladieswear. In fact, the contract makes no mention at all of direct sales by Ladieswear to United States customers. Instead, the agreement terms Wientex the "sole representative" of Ladieswear with respect to United States customers. This language indicates that Ladieswear was prohibited from using another representative to sell Ladieswear products to United States customers. It does not indicate that Ladieswear itself was prohibited from selling its apparel to United States customers. Cf. Vanguard Telecom., Inc. v. S. New England Telephone Co., 900 F.2d 645, 651-52 (D.N.J. 1990) (declining to reform contract to create an exclusive right to sell where agreement did not contain "language requiring commission to [the broker] on any sale, or on sales specifically made by [principal], nor is there language giving [the broker] an exclusive right to sell [principal] capacity"). Therefore, the Court finds that Ladieswear was permitted to deal directly with Liz Claiborne under the terms of its agreement with Wientex.

Despite its brevity, this agreement was made between two sophisticated parties. Seardel is the largest clothing and textile manufacturers in South Africa. Wientex is owned by Lance

---

Holiday Homes "is equally appropriate for brokerage agreements to arrange the sale of a commodity or business interest. There is nothing intrinsic to the sale of real estate which suggests that the 'clear and unequivocal' rule must be limited to the facts of Holiday Homes." Vanguard Telecom., Inc. v. S. New England Telephone Co., 722 F. Supp. 1166, 1179 (D.N.J. 1989). Accordingly, Holiday Homes is still instructive on this point.

   If, however, footnote 3 in Vanguard is a broad condemnation of the legal principles of Holiday Homes outside the real estate context, and thus, an express overruling of the district court's language to the contrary, the Court's holding does not change. Since the agreement between Wientex and Ladieswear contains *no provision* granting Wientex an exclusive right to sell Ladieswear products, traditional contract principles prohibit this Court from writing such a term into the agreement.

Wiener who admittedly has acted as an agent for South African clothing manufacturers with respect to selling goods in the United States for almost twenty-five years. Wiener also admittedly owned and operated a number of corporate entities. If Wientex wanted an exclusive right to sell to customers based in the United States which would prevent Ladieswear from dealing directly with such customers, it should have contracted for that right.

The Court cannot, after-the-fact, reform the contract to provide Wientex with such rights. See Vanguard, 900 F.2d at 651-52 ("For this court to hold that the agreement gave Vanguard a right to commissions on all sales to companies on the Account List would require us to enlarge our role from contract construction to contract reformation, a role we decline to assume under the facts of this case."). Therefore, Wientex is not entitled to a 6% commission on sales made by Ladieswear directly to Liz Claiborne under the theory that Wientex had an exclusive right to sell Ladieswear products and Ladieswear breached its agreement with Wientex by making sales directly to Liz Claiborne.

**D.**     **Contract Language Regarding Commissions**

Paragraph two of the agreement between Seardel and Wientex includes the following relevant language regarding the payment of commissions to Wientex:

> Wientex shall be entitled to commission at the rate of 6% (six percent) on the net sales value (being FOB Value as quoted on the commercial invoice less commission due to Wientex) emanating from orders obtained by Wientex . . . . This shall also apply to all sales where Wientex have [sic] sent a specific garment/techpack to Ladieswear to cost, regardless or not whether, thereafter, another source shall request Ladieswear to quote on this specific garment (paragraph 2).

Wientex claims that parties intended the phrase "emanating from orders obtained by Wientex" to mean that "once Wientex obtained the first order from a customer, such as Liz

9

Claiborne, all successive orders from that customer were commissionable to Wientex." Furthermore, Wientex claims that the parties intended that once Wientex "introduced" a United States customer to Ladieswear, it was entitled to a 6% commission on all orders that were placed by that customer.

The Court finds Wientex's interpretation of the contract language to be inconsistent with the plain language of the contract.  The agreement says that Wientex is entitled to a 6% commission "on the *net sales value* (being FOB Value as quoted on the commercial invoice due to Wientex) emanating from orders obtained by Wientex (emphasis added)."  It does not say that Wientex is entitled to a 6% commission on "orders emanating from orders obtained by Wientex" or on "orders emanating from customers introduced by Wientex."  If Wientex wanted to receive commissions on "orders emanating from orders obtained by Wientex," or "orders emanating from customers introduced by Wientex," it should have contracted for such rights.  Instead, Wientex contracted to receive commissions on the net sales value that emanates from orders obtained by Wientex.  Thus, under the agreement, to receive a 6% commission on an order by a United States customer, Wientex needed to obtain that specific order itself.  If it were to obtain a specific order, Wientex would be entitled to a 6% commission on the net sales value of that particular order.

In support of its position, Wientex submitted various emails, letters, and other documents illustrating correspondence between Lance Wiener and Peter Jacobson, Divisional Managing Director of Ladieswear,  both before the parties signed the agreement on March 7, 2001 and after that agreement was executed.  The Court finds that the documents dated prior to the March 7, 2001 agreement between the parties are not relevant to the meaning of the terms of the agreement because the language in the agreement is clear as to the circumstances under which Wientex is

entitled to commissions on sales. See Dontzin, 694 A.2d at 267. Furthermore, any correspondence after the agreement was executed is not relevant to what Wientex and Ladieswear intended at the time they executed the agreement.

Accordingly, the Court finds that there is no genuine issue of material fact as to the plain language of the contract. The contract prohibits Wientex from receiving a 6% commission on orders it did not specifically procure.[9] It is undisputed that Wientex took no part in the sales at issue in this matter made by Ladieswear directly to Liz Claiborne. Wientex's only claims in this regard are that his actions prior to being prohibited from dealing with Liz Claiborne entitle him to such commissions.

Thus, Wientex is not entitled to a 6% commission on sales made by Ladieswear directly to Liz Claiborne on the theory that the contract entitled Wientex to a commission on orders emanating from orders obtained by Wientex or emanating from customers introduced by Wientex.

### E.  Efficient Procuring Cause

Plaintiff claims that if the agreement is silent as to the services it needed to perform to earn a commission on sales of Ladieswear products to United States customers, it is entitled to commissions from sales made by Ladieswear directly to Liz Claiborne because it was the "efficient procuring cause" or "efficient producing cause"[10] of the sale. An individual or entity is

---

[9] Since Wientex does not argue that it is entitled to a 6% commission on direct sales by Ladieswear to Liz Claiborne because it provided Ladieswear with a specific garment/techpack from Liz Claiborne, the Court does not consider whether Wientex is entitled to commissions under this language in the agreement.

[10] The phrases "efficient producing cause" and "efficient procuring cause" are used interchangeably in the case law and accordingly, will be used interchangeably in this opinion. See Leadership Real Estate, Inc. v. Harper, 638 A.2d 173, 183 (N.J. Super. Law Div. 1993) (stating that the doctrine of "efficient producing cause" is also referred to as "efficient procuring

the efficient producing cause of a sale when the broker caused the seller to negotiate with a customer produced by the broker who was ready, able, and willing to perform, and where the transaction was later consummated without a substantial break in ensuing negotiations.  See, e.g., Vanguard, 900 F.2d at 652; cf. Floyd v. Morristown European Motors, Inc., 351 A.2d 791, 794 (N.J. Super. Ct. App. Div. 1976) (salesman effectively produces a sale when he procures an order that ripens into a completed sale).

First, the Court notes that the "efficient producing cause" doctrine only applies when a contract is *silent* as to services required to earn a commission.  In this case, the agreement between Wientex and Seardel clearly spells out the circumstances under which Wientex is to earn a 6% commission and under which Wientex is to earn a reduced commission of 2.5% .[11]  Accordingly, there is no need to apply the "efficient producing cause" doctrine to this matter.

However, even if the efficient producing cause doctrine does apply here, Plaintiff is not entitled to receive a 6% commission on the direct sales by Ladieswear to Liz Claiborne because it was not the efficient producing cause of those sales.  It is appropriate to grant summary judgment on the issue of whether a party was the efficient producing cause of bringing about a sale of goods when "no reasonable jury would return a verdict for the nonmoving party."  Vanguard, 900 F.2d at 652 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

cause").

[11] Plaintiff does not argue that it is entitled to the reduced commission of 2.5% set forth in paragraph 3 of the agreement.  However, paragraph 3 states: "[w]here sales are made to USA customers as a result of orders emanating from a sourcing agent, and where previously Ladieswear had received orders or a techpack/samples to counter sample for such customer, then Wientex shall be entitled to commission at the rate of 2.5% (two and one half percent) on the net sales value of such orders payable when Ladieswear have [sic] been paid in full for the value of the goods shipped to the USA customers."

Plaintiff wants the Court to view the orders between Ladieswear and Liz Claiborne as one large-scale transaction that is made up of separate orders of apparel. Plaintiff claims that it initially introduced Ladieswear to Liz Claiborne. It is undisputed that for a period of approximately sixteen months, Plaintiff acted as a middle-man between Liz Claiborne and Ladieswear in obtaining orders for Ladieswear products. It is also undisputed that in approximately June, 2002, Gary Ross of Liz Claiborne informed Plaintiff that it would no longer be dealing with Ladieswear through Plaintiff, but would instead deal directly with Ladieswear. From that point forward, Plaintiff played no role in obtaining orders from Liz Claiborne for Ladieswear products. However, Plaintiff argues that its initial introduction of the parties and past procurement of orders make it the efficient procuring cause of all subsequent orders for Ladieswear products placed by Liz Claiborne.

Plaintiff's position is legally unfounded. First, the mere act of introducing a seller to a buyer does not constitute an efficient procuring cause. See, e.g., C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 558 A.2d 28, 36-37 (N.J. Super. Ct. App. Div. 1989); Weinstein v. Clementsen, 90 A.2d 77, 80 (N.J. Super. Ct. App. Div. 1952). Furthermore, the fact that Wientex obtained previous orders from Liz Claiborne for Ladieswear products does not mean that Wientex was the efficient procuring cause of the subsequent orders that Ladieswear obtained directly from Liz Claiborne. Each order placed by Liz Claiborne for Ladieswear products is a separate order. See C.B. Snyder Realty Inc., 558 A.2d at 36-37 (finding that broker was not the efficient procuring cause of three transactions by analyzing each separately).

Although Wientex may have been the efficient producing cause of Liz Claiborne orders for Ladieswear products that it negotiated and obtained prior to June, 2002, it is not the efficient

13

producing cause of any subsequent orders that it played no role in negotiating, procuring, or otherwise obtaining. See Vanguard, 900 F.2d at 652-53 (finding that broker who originally contacted two potential customers on behalf of principal was not the efficient procuring cause of orders subsequently placed directly by customers with principal because the broker played no role at all in the transactions); Leadership Real Estate, Inc. v. Harper, 638 A.2d 173, 184-85 (N.J. Super. Law Div. 1993) (holding that broker was not efficient producing cause of sale made directly by the seller to the buyer where, although broker played role in initial negotiations between the parties which ultimately fell through, he played no role in the negotiations that ultimately led to the purchase of the property). As of June, 2002, when Liz Claiborne advised Wientex that it would be dealing directly with Ladieswear, there was not only a substantial break in the negotiations between Wientex and Liz Claiborne, but a complete termination of such negotiations. See Schettino v. Roizman Development, Inc., 708 A.2d 446, 449 (N.J. Super. Ct. App. Div. 1998) (stating that broker was not the efficient procuring cause of sale between buyer and seller where the property was sold after broker ceased participation in the negotiations). Thus, Wientex is not the efficient producing cause of the sales between Liz Claiborne and Ladieswear.

Plaintiff's reliance on Weinstein v. Clementsen and C.B. Snyder Realty to support its argument is misplaced. The court in Weinstein rejected the plaintiff's position that "the broker who first 'finds' a potential customer and arouses his interest in the matter which the broker is promoting acquires an exclusive right to develop that interest into an actual business transaction" because "[s]uch is not the American law of free enterprise." Weinstein, 90 A.2d at 80. The court found that the seller did not have to pay a commission to the broker who initially introduced the

14

buyer and seller.  Furthermore, Weinstein is factually distinct from the present circumstances because it involved a single transaction, not a series of separate sales.  See id. at 78-79.

Plaintiff cites C.B. Snyder Realty for the proposition that Wientex is entitled to commissions on sales made directly by Ladieswear to Liz Claiborne because Ladieswear "enhanced its financial position at the expense of [Wientex's] commission."  The C.B. Snyder Realty court indicated that brokers were only successful in establishing *tortious interference* claims against a client if the client "enhanced its financial position at the expense of the broker's commission."  C.B. Snyder Realty, 558 A.2d at 34-35.  This was not a discussion of a breach of contract claim, which is the subject of this present motion for partial summary judgment, but of a tortious interference claim.  Therefore, Plaintiff's argument fails.

In conclusion, it is undisputed that Wientex took no part in procuring or otherwise negotiating the orders placed by Liz Claiborne directly with Ladieswear after June, 2002 for which Wientex seeks a 6% commission.  Accordingly, the evidence is overwhelming that Wientex could not have been the efficient producing cause of orders that it was not involved in.  See Vanguard, 900 F.2d at 653; see also TeamResources, Inc. v. Exodus Comm., Inc., 60 Fed. Appx. 899, 904 (3d Cir. 2003) (affirming district court's finding that broker was not the efficient procuring cause of sale of property where broker showed buyer the property and provided buyer with basic information about the property but "did not have any role in the negotiations that led to the deal); Harper, 638 A.2d at 184-85 (finding that broker was not efficient procuring cause when he played no role in the negotiations that ultimately led to the sale of property).

### III.  Conclusion

For the reasons stated above, the Court grants Defendant Seardel's motion for partial

summary judgment on Plaintiff's breach of contract claim set forth in count one of Plaintiff's complaint. An appropriate order accompanies this opinion.

DATED: 6th of October, 2005                      s/ Joel A. Pisano
                                                                               JOEL A. PISANO, U.S.D.J.